JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

NICHOLAS E. LANPHIER, TRUSTEE OF THE NICHOLAS E. LANPHIER FAMILY TRUST DATED THE 21ST OF DECEMBER 1987;

        Plaintiffs,

v.

SILVERLEAF FINANCIAL 3, LLC; ET AL.

        Defendants.

AND RELATED COUNTERCLAIM

Case No. SACV12-02086-AG (MLGx)

**JUDGMENT**

    The motion to enter default and default judgment came on regularly for hearing.  Plaintiff/Counter-Defendant, Nicholas E. Lanphier, Trustee of The Nicholas E. Lanphier Family Trust dated the 21st of December 1987 ("Lanphier") appeared by and through counsel and after considering the evidence submitted and argument of counsel, James D. Stroffe and Andrew R. Nelson of Friedman Stroffe & Gerard, P.C. Defendants Shane Baldwin

1

JUDGMENT

2030725.1

("Baldwin"), SilverLeaf Financial, LLC ("SL"); SilverLeaf Financial 3, LLC ("SL3"); SilverLeaf Financial 5, LLC ("SL5"); and SilverLeaf Financial 7, LLC ("SL7") did not file an opposition and did not appear.

After considering the evidence and argument of counsel the court found in favor of Lanphier on his claims for compensatory damages, attorney's fees and costs, punitive damages and post judgment interest. The court also found from the evidence and argument of counsel, being mindful that a decree of quiet title is binding upon all the parties to the action and those claiming title through them as successors-in-interest, and that such successors-in-interest are bound by a judgment of quiet title to the same extent they would have been if they had been a party to the suit, and satisfied that the risk of unknown claimants in the Torrance, Eagle Creek, Tippecanoe, and Ohio Properties who do not claim through parties, SL, SL3, or SL5 is minimal, that Lanphier is entitled to the remedies of quiet title as to an undivided 50% interest as a tenant in common in each of the Torrance Property, Eagle Creek Property, Tippecanoe Property and Ohio Property (all as more specifically described in this Judgment) and judicial foreclosure of both the Lanphier real property security interests, represented by the Eagle Creek Mortgage, the Tippecanoe Mortgage and the Ohio Mortgage (all as more specifically described in this Judgment), and the Lanphier personal property security interests (as more fully described in this Judgment).

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT judgment is entered in favor of Plaintiff/Counter-Defendant, Nicholas E. Lanphier, Trustee of The Nicholas E. Lanphier Family Trust dated the 21st of December 1987 and against Baldwin, SL, SL3, SL5, and SL7.

///

///

JUDGMENT

2030725.1

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT Lanphier shall recover compensatory damages as follows:

a. From Baldwin, SL, and SL5, jointly and severally, the sum of $5,448,248.32.

b. From Baldwin, SL, SL3, SL5, and SL7, jointly and severally, the sum of $5,149,639.26.

c. From Baldwin, SL, and SL7, jointly and severally, the sum of $728,866.23.

d. From Baldwin, SL, SL3, SL5, and SL7, jointly and severally, the sum of $437,140.30 for attorneys' fees.

e. From Baldwin, SL, SL3, SL5, and SL7, jointly and severally, post-judgment interest.

f. From Baldwin, SL, SL3, SL5, and SL7, jointly and severally, costs of this action.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT, after consideration of clear and convincing evidence presented by Lanphier establishing that the harm caused by Defendants was the result of intentional malice, trickery, or deceit, Lanphier shall recover from Baldwin, SL, SL3, SL5, and SL7, jointly and severally, punitive damages in the sum of $11,326,753.81 to punish and deter future conduct.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT:

g. Title to that certain real property situated in Torrance, California (the "Torrance Property") and described in the legal description attached to the deed in **Exhibit A** hereto is quieted in Lanphier as to an undivided 50% fee interest as a tenant in common as of November 11, 2009 ("Torrance Ownership Interest");

JUDGMENT

i. Any and all claims of, Baldwin, SL, SL3, SL5, SL7 and their respective successors in interest, if any, in and to the Lanphier Torrance Ownership Interest, or the proceeds of sale thereof, are without any right, estate, title, lien, or interest;

ii. All such persons are permanently enjoined from asserting any estate, right, title, lien, or interest in or to the Lanphier Torrance Ownership Interest, or the proceeds of sale thereof, excepting only those claiming by or through Lanphier;

iii. The Receiver appointed in the Order Appointing Receiver dated December 18, 2012 is hereby ordered to execute and deliver on behalf of SL3 as grantor to Lanphier as grantee a deed to an undivided one-half interest in and to the Torrance Property in the form attached hereto as Exhibit A. Provided however, with respect to any contract for sale of such property made by the Receiver and a Qualified Bidder before entry of this Judgment pursuant to the Order Approving Bid Procedures previously entered by this Court (Dkt 106 and Dkt 110, as clarified by Dkt 111), which sale is confirmed by this Court, in lieu of delivering the deed to Lanphier required by this subsection (iii), the Receiver is specifically authorized and permitted to sell such property with Lanphier's undivided one-half interest in and to such property attaching to the proceeds of such Receiver sale.

iv. Pursuant to Cal. Civ. Code Section 764.030, such judgment is "binding and conclusive on (a) all persons

4

2030725.1

known and unknown who were parties to the action and who have any claim to the [Torrance] property" and "(b) all persons who were not parties to the action and who have any claim to the property which was not of record at the time the lis pendens was filed."

h.   Title to that certain real property situated in Indianapolis, Indiana ("Eagle Creek Property") and described in the legal description attached to the deed in **Exhibit B** hereto is quieted in Lanphier as to an undivided 50% fee interest as a tenant in common as of January 13, 2010 ("Lanphier Eagle Creek Ownership Interest");

    i.   Any and all claims of Baldwin, SL, SL3, SL5, SL7 and their respective successors in interest, if any, in and to the Lanphier Eagle Creek Ownership Interest, or the proceeds of sale thereof, are without any right, estate, title, lien, or interest;

    ii.   All such persons are permanently enjoined from asserting any estate, right, title, lien, or interest in or to the Lanphier Eagle Creek Ownership Interest, or the proceeds of sale thereof, excepting only those claiming by or through Lanphier;

    iii.   The Receiver appointed in the Order Appointing Receiver dated December 18, 2012 is hereby ordered to execute and deliver on behalf of SL5 as grantor to Lanphier as grantee a deed to an undivided one-half interest in and to the Eagle Creek Property in the form attached hereto as Exhibit B. Provided however, with respect to any contract for sale of such property made by the Receiver and a Qualified Bidder before entry of this Judgment pursuant to

the Order Approving Bid Procedures previously entered by this Court (Dkt 106 and Dkt 110, as clarified by Dkt 111), which sale is confirmed by this Court, in lieu of delivering the deed to Lanphier required by this subsection (iii), the Receiver is specifically authorized and permitted to sell such property with Lanphier's undivided one-half interest in and to such property attaching to the proceeds of such Receiver sale.

i.  Title to that certain real property situated in Lafayette, Indiana ("Tippecanoe Property") and described in the legal description attached to the deed in **Exhibit C** hereto is quieted in Lanphier as to an undivided 50% fee interest as a tenant in common as of January 13, 2010 ("Lanphier Tippecanoe Ownership Interest");

   i.  Any and all claims of Baldwin, SL, SL3, SL5, SL7 and their respective successors in interest, if any, in and to the Lanphier Tippecanoe Ownership Interest, or the proceeds of sale thereof, are without any right, estate, title, lien, or interest;

   ii. All such persons are permanently enjoined from asserting any estate, right, title, lien, or interest in or to the Lanphier Tippecanoe Ownership Interest, or the proceeds of sale thereof, excepting only those claiming by or through Lanphier;

   iii. The Receiver appointed in the Order Appointing Receiver dated December 18, 2012 is hereby ordered to execute and deliver on behalf of SL5 as grantor to Lanphier as grantee a deed to an undivided one-half interest in and to the Tippecanoe Property in the form attached hereto as

6

Exhibit C. Provided however, with respect to any contract for sale of such property made by the Receiver and a Qualified Bidder before entry of this Judgment pursuant to the Order Approving Bid Procedures previously entered by this Court (Dkt 106 and Dkt 110, as clarified by Dkt 111), which sale is confirmed by this Court, in lieu of delivering the deed to Lanphier required by this subsection (iii), the Receiver is specifically authorized and permitted to sell such property with Lanphier's undivided one-half interest in and to such property attaching to the proceeds of such Receiver sale.

j.  Title to that certain property situated in West Chester, Ohio (the "Ohio Property") and described in the legal description attached to the deed **Exhibit D** hereto is quieted in Lanphier as to an undivided 50% fee interest as a tenant in common as of January 13, 2010 ("Lanphier Ohio Ownership Interest");

i.  Any and all claims of Baldwin, SL, SL3, SL5, SL7 and their respective successors in interest, if any, in and to the Lanphier Ohio Ownership Interest, or the proceeds of sale thereof, are without any right, estate, title, lien, or interest;

ii.  All such persons are permanently enjoined from asserting any estate, right, title, lien, or interest in or to the Lanphier Ohio Ownership Interest, or the proceeds of sale thereof, excepting only those claiming by or through Lanphier;

iii.  The Receiver appointed in the Order Appointing Receiver dated December 18, 2012 is hereby ordered to execute and deliver on behalf of SL5 as grantor to Lanphier as grantee a deed to an undivided one-half interest in and to

7

2030725.1

the Ohio Property in the form attached hereto as Exhibit D. Provided however, with respect to any contract for sale of such property made by the Receiver and a Qualified Bidder before entry of this Judgment pursuant to the Order Approving Bid Procedures previously entered by this Court (Dkt 106 and Dkt 110, as clarified by Dkt 111), which sale is confirmed by this Court, in lieu of delivering the deed to Lanphier required by this subsection (iii), the Receiver is specifically authorized and permitted to sell such property with Lanphier's undivided one-half interest in and to such property attaching to the proceeds of such Receiver sale.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT

k.   With regard to the Torrance Property:

      i.   SL3 is indebted to Lanphier under that certain Promissory Note ("SL3 Note") dated February 7, 2011.

      ii.   SL3 is indebted to Lanphier under that certain First Amended and Restated Participation Agreement ("SL3 Agreement") dated November 5, 2009, effective as of August 27, 2009.

      iii.   The payment and performance under the SL3 Note and SL3 Agreement are secured by a first lien Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("SL3 Deed of Trust") dated February 7, 2011 and executed by SL3 in favor of Lanphier as beneficiary, recorded on February 22, 2011 as document number 20110273532 in the official records of Los Angeles County, California, and constituting a first priority lien on the

8

2030725.1

Torrance Property.

iv. The payment and performance under the SL3 Note and SL3 Agreement are also secured by that certain Collateral Assignment And Security Agreement dated February 7, 2011, executed by SL3 in favor of Lanphier, as perfected by that certain UCC 1 Financing Statement filed with the Utah Secretary of State on March 18, 2011, encumbering all of the personal property described therein, as more specifically set forth in **Exhibit E** hereto (the "SL3 Personal Property Security").

v. SL3's payment and performance under the SL3 Note and SL3 Agreement are also guaranteed by SL5 and SL7, which guaranty is secured by that certain Collateral Assignment and Security Agreement dated February 7, 2011, as perfected by that certain UCC 1 Financing Statement filed with the Utah Secretary of State on March 18, 2011, encumbering all of the personal property described therein, as more specifically set forth in **Exhibit F** hereto (the "SL3 Loan Pledge").

vi. SL5 and SL7 are jointly and severally liable under such guaranty for payment of SL3's indebtedness under the SL3 Note and SL3 Agreement.

vii. SL3's payment and performance under the SL3 Note and SL3 Agreement are also guaranteed by Baldwin and SL by that certain written unconditional guaranty dated February 7, 2011 (the "Unconditional Guaranty").

viii. Baldwin and SL are jointly and severally liable under such guaranty for payment of SL3's indebtedness under the SL3

9

2030725.1

Note and SL3 Agreement.

    ix. SL3's payment and performance under the SL3 Note and SL3 Agreement are also secured by that certain Assignment of Distributions dated February 7, 2011, executed by SL in favor of Lanphier (the "GAHA Distribution Security").

    x. The amount of the indebtedness under the SL3 Note is as follows:

        1. principal in the amount of $1,993.570.32.

        2. interest, penalties, and late charges in the amount of $368,110.72.

        3. attorney's fees in the amount of $437,140.30.

        4. actual costs of foreclosure and sale.

    xi. The amount of the indebtedness under the SL3 Agreement is as follows:

        1. $2,812,958.22.

    xii. SL3's payment and performance under the SL3 Agreement is also guaranteed by SL, which guaranty is secured by that certain Collateral Assignment and Security Agreement dated November 5, 2009, effective as of August 27, 2009, as perfected by that certain UCC 1 Financing Statement filed with the Utah Secretary of State on November 6, 2009, encumbering all of the personal property described therein, as more specifically set forth in **Exhibit G** hereto (the "SL Torrance Security").

    xiii. SL is jointly and severally liable under such guaranty for payment of SL3's indebtedness under the SL3 Agreement.

    xiv. SL3's payment and performance under the SL3 Agreement

10

are also guaranteed by Baldwin by written guaranty dated August 27, 2009.

xv. Baldwin is jointly and severally liable under such guaranty for payment of SL3's indebtedness under the SL3 Agreement.

xvi. SL3's payment and performance under the SL3 Agreement are also secured by an assignment of deposit account pursuant to that certain Agreement for Deposit and Assignment of Deposits dated November 25, 2009, executed by SL in favor of Lanphier (the "SL Deposit Security").

xvii. Pursuant to Cal. Civ. Proc. Code Section 726 et seq., judicial foreclosure of the SL3 Deed of Trust encumbering the Torrance Property is appropriate; the Court is satisfied that Lanphier had a first priority security interest in the Torrance Property, that such security interest was properly perfected, that the debt secured by such interest was in material default, and that all conditions precedent have been met; Further, Lanphier is entitled to a deficiency judgment against SL3, which is additionally enforceable against guarantors SL, SL5, SL7 and Baldwin, jointly and severally, if the proceeds from the sale of the Torrance Property are insufficient to satisfy SL3's indebtedness under the SL3 Note and SL3 Agreement, subject to a fair value determination hearing following the sale, in accordance with Cal. Civ. Code Section 726 et seq.

xviii. Pursuant to Cal. Com. Code Section 9601, and Cal. Civ. Code Sections 712.010 and 716.010, enforcement of

11

1   Lanphier's security interests by judicial foreclosure of the
2   collateral described in the SL3 Personal Property Security,
3   the SL3 Loan Pledge, the GAHA Distribution Security, the
4   SL Torrance Security, and the SL Deposit Security
5   (collectively, "the SL3 Personal Property Collateral") is
6   appropriate; the Court is satisfied that pursuant to Cal.
7   Com. Code Section 9203 et seq., Lanphier has
8   enforceable security interests in the SL3 Personal Property
9   Collateral represented by the SL3 Personal Property
10   Security, the SL3 Loan Pledge, the GAHA Distribution
11   Security, the SL Torrance Security, and the SL Deposit
12   Security, that Lanphier has perfected his security interests
13   in all the SL3 Personal Property Collateral, that appropriate
14   value was given for each such security interest, that
15   Lanphier has rights in all the SL3 Personal Property
16   Collateral, that Lanphier has authenticated the security
17   agreements that provide a description of the SL3 Personal
18   Property Collateral; and that, pursuant to Cal. Com. Code
19   Section 9615, Lanphier is entitled to a deficiency judgment
20   against SL3, which is additionally enforceable against
21   guarantors SL, SL5, SL7 and Baldwin, jointly and
22   severally, if the proceeds from the sale of the SL3 Personal
23   Property Collateral is insufficient to satisfy SL3's
24   indebtedness under the SL3 Note and SL3 Agreement.

25   xix.  The Torrance Property and the SL3 Personal Property
26   Collateral, or so much thereof as may be necessary, will be
27   sold in the manner prescribed by law by the levying officer,
28   on proper application. Any party to this action may

JUDGMENT

2030725.1

1                                            purchase at the sale.

2                          xx. From the proceeds of sale after deducting costs and

3                                expenses of the levy and sale, the levying officer will pay to

4                                Lanphier,

5                                    1. First, the indebtedness under the SL3 Note as set

6                                       forth above, together with post-judgment interest;

7                                       2. Second, if any surplus remains after making the

8                                       payment specified in the previous subparagraph, the

9                                       indebtedness under the SL3 Agreement set forth

10                                       above, together with post-judgment interest;

11                                       3. Third, if any surplus remains after making the

12                                       payments specified in the previous two

13                                       subparagraphs, the surplus will be paid by the

14                                       levying officer to any junior encumbrancers; and

15                                       4. Fourth, if any surplus remains after making the

16                                       payments specified in the previous three

17                                       subparagraphs, the surplus will be paid to the

18                                       debtors as their interests may appear.

19                     xxi. If the Receiver appointed in the Order Appointing Receiver

20                                dated December 18, 2012 shall have sold the Torrance

21                                Property, or any portion thereof, pursuant to the Order

22                                Approving Bid Procedures, Setting Sale Hearing Date And

23                                Related Matters (Dkt 110 filed October 28, 2013) prior to

24                                any sale by the levying officer pursuant to this judgment,

25                                then the Receiver shall distribute the proceeds of sale in

26                                accordance with and in the order prescribed by

27                                subparagraph m.xx, above.

28                   xxii. From and after delivery of the Torrance Property deed by

JUDGMENT

2030725.1

the levying officer to the purchaser at the sale, Defendants and all persons claiming under them, lien claimants, judgment creditors, claimants under a junior deed of trust or mortgage, purchasers, encumbrancers, or otherwise, from and after the date of execution of the SL3 Deed of Trust, are barred and foreclosed from all rights, claims, interests, or equity of redemption in the property encumbered by the SL3 Deed of Trust when time for redemption has elapsed.

I.    With regard to the Eagle Creek Property and the Tippecanoe Property (the "Indiana Properties"), and the Ohio Property:

i.   SL5 is indebted to Lanphier under that certain Promissory Note ("SL5 Note") dated December 13, 2010.

ii.  SL5 is indebted to Lanphier under that certain Loan Participation Agreement ("SL5 Agreement") dated September 29, 2010.

iii. The payment and performance under the SL5 Note and SL5 Agreement are secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated December 21, 2010 and executed by SL5 in favor of Lanphier as beneficiary, recorded on December 21, 2010 in the official records of Marion County, Indiana as document number A201000129587 ("Eagle Creek Mortgage"); that certain Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated December 7, 2010, recorded on December 21, 2010 in the official records of Tippecanoe County, Indiana as document number 201010024226 ("Tippecanoe

14

JUDGMENT

Mortgage"); and that certain Open-End Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated December 13, 2010, recorded on December 20, 2010 in the official records of Butler County, Ohio in Book 8293, page 1833 as file number 2010-00055226 ("Ohio Mortgage"), and constituting first priority liens on the Indiana Properties and the Ohio Property.

iv. The amount of the indebtedness under the SL5 Note is as follows:

    1. principal in the amount of $1,089.577.40.

    2. interest, penalties, and late charges in the amount of $531,447.79.

    3. attorney's fees in the amount of 437,140.30.

    4. actual costs of foreclosure and sale.

v. The amount of the indebtedness under the SL5 Agreement is as follows:

    1. $3,827,223.13

vi. SL5's payment and performance under the SL5 Agreement are also guaranteed by SL, which guaranty is secured by that certain Collateral Assignment and Security Agreement dated September 29, 2009, as perfected by that certain UCC 1 Financing Statement filed with the Utah Secretary of State on October 1, 2009, encumbering all of the personal property described therein, as more specifically set forth in **Exhibit H** hereto (the "SL Marshall Security").

vii. SL is jointly and severally liable under such guaranty for payment of SL5's indebtedness under the SL5 Agreement.

viii. SL5's payment and performance under the SL5 Agreement

15

JUDGMENT

are also guaranteed by Baldwin by written guaranty dated September 29, 2009.

ix. Baldwin is jointly and severally liable under such guaranty for payment of SL5's indebtedness under the SL5 Agreement.

x. SL5's payment and performance under the SL5 Note and SL5 Agreement are also guaranteed by Baldwin and SL by written guaranty dated December 13, 2010.

xi. Baldwin and SL are jointly and severally liable under such guaranty for SL5's payment of the indebtedness under the SL5 Agreement and SL5 Note.

xii. Pursuant to Indiana Code Section 32-30-10-3, and Ohio Rev. Code Ann. Section 2323.07 et seq., respectively, judicial foreclosure of the SL5 Deeds of Trust encumbering the Indiana and Ohio Properties is appropriate; the Court is satisfied that Lanphier had a first priority security interest in each of the Indiana Properties and Ohio Property, that such security interests were properly perfected, that the debt secured by each such interest was in material default, and that all conditions precedent have been met. Further, pursuant to the terms of the Ohio Mortgage, Eagle Creek Mortgage, and Tippecanoe Mortgage, each of which create, in Lanphier, a right to pursue a deficiency judgment (See Ohio Rev. Code Section 2329.08 and Indiana Code Section 32-30-10-4), Lanphier is entitled to deficiency judgments against SL5, which are additionally enforceable against guarantors SL and Baldwin, jointly and severally, if the proceeds from the sale of the Indiana Properties and

16

Ohio Property are insufficient to satisfy the indebtedness under the SL5 Note and SL5 Agreement, and with respect to the Ohio Property only subject to an inquest by the levying officer in accordance with Ohio Rev. Code Ann. Section 2329.17.

xiii.   Pursuant to Cal. Com. Code Section 9601, and Cal. Civ. Code Sections 712.010 and 716.010, enforcement of Lanphier's security interests by judicial foreclosure of the collateral described in the SL Marshall Security is appropriate; the Court is satisfied that pursuant to Cal. Com. Code Section 9203 et seq., Lanphier has an enforceable security interest in the SL Marshall Security, that Lanphier has perfected his security interest in the SL Marshall Security, that appropriate value was given for the SL Marshall Security interest, that Lanphier has rights in the SL Marshall Security, and that Lanphier has authenticated the security agreements that provide a description of the SL Marshall Security; Further, pursuant to Cal. Com. Code Section 9615, Lanphier is entitled to a deficiency judgment against SL5, which is additionally enforceable against guarantors Baldwin and SL jointly and severally, if the proceeds from the sale of the SL Marshall Security are insufficient to satisfy SL5's indebtedness under the SL5 Note and SL5 Agreement.

xiv.   The Indiana Properties, Ohio Property and SL Marshall Security, or so much thereof as may be necessary, will be sold in the manner prescribed by law by the levying officer, on proper application. Any party to this action may

17

purchase at the sale.

xv. From the proceeds of sale after deducting costs and expenses of the levy and sale, the levying officer will pay to Lanphier,

1. First, the indebtedness under the SL5 Note as set forth above, together with post-judgment interest;

2. Second, if any surplus remains after making the payment specified in the previous subparagraph, the indebtedness under the SL5 Agreement set forth above, together with post-judgment interest;

3. Third, if any surplus remains after making the payments specified in the previous two subparagraphs, the surplus will be paid by the levying officer to any junior encumbrancers; and

4. Fourth, if any surplus remains after making the payments specified in the previous three subparagraphs, the surplus will be paid to the debtors as their interests may appear.

xvi. If the Receiver appointed in the Order Appointing Receiver dated December 18, 2012 shall have sold the Indiana Properties or Ohio Property, or any portion thereof, pursuant to the Order Approving Bid Procedures, Setting Sale Hearing Date And Related Matters (Dkt 106 filed October 28, 2013) prior to any sale by the levying officer pursuant to this judgment, then the Receiver shall distribute the proceeds of sale in accordance with and in the order prescribed by subparagraph n.xv, above.

xvii. From and after delivery of the Eagle Creek Property deed

18

or the Tippecanoe Property deed or Ohio Property deed by the levying officer to the purchaser at the sale, defendants and all persons claiming under them, lien claimants, judgment creditors, claimants under a junior deed of trust or mortgage, purchasers, encumbrancers, or otherwise, from and after the date of execution of the Eagle Creek Mortgage, Tippecanoe Mortgage, or Ohio Mortgage, are barred and foreclosed from all rights, claims, interests, or equity of redemption in the property encumbered by the Eagle Creek Mortgage, Tippecanoe Mortgage, or Ohio Mortgage when time for redemption has elapsed.

m.   With regard to SL7:

i.   SL7 is indebted to Lanphier under that certain First Amended and Restated Loan Participation Agreement ("SL7 Agreement") dated November 5, 2010, effective as of August 14, 2009.

ii.   The amount of the indebtedness under the SL7 Agreement—as of the date of this Judgment—is as follows:

1. $728,866.23

iii.   SL7's payment and performance under the SL7 Agreement are also guaranteed by SL, which guaranty is secured by that certain Collateral Assignment and Security Agreement dated November 5, 2009, effective as of August 14, 2009, as perfected by that certain UCC 1 Financing Statement filed with the Utah Secretary of State on November 6, 2009, encumbering all of the personal property described therein, as more specifically set forth in **Exhibit I** hereto

19

2030725.1

1   (the "SL Boston Security").

2      iv.  SL is jointly and severally liable under such guaranty for
3   SL7's payment of the indebtedness under the SL7
4   Agreement.

5      v.  Pursuant to Cal. Com. Code Section 9601, and Cal. Civ.
6   Code Sections 712.010 and 716.010, enforcement of
7   Lanphier's security interests by judicial foreclosure of the
8   collateral described in the SL Boston Security is
9   appropriate; the Court is satisfied that pursuant to Cal.
10   Com. Code Section 9203 et seq., Lanphier has an
11   enforceable security interest in the SL Boston Security,
12   that Lanphier has perfected his security interest in the SL
13   Boston Security, that appropriate value was given for the
14   SL Boston Security interest, that Lanphier has rights in the
15   SL Boston Security, and that Lanphier has authenticated
16   the security agreements that provide a description of the
17   SL Boston Security; Further, pursuant to Cal. Com. Code
18   Section 9615,  Lanphier is entitled to a deficiency judgment
19   against SL7, which is additionally enforceable against
20   guarantor SL jointly and severally, if the proceeds from the
21   sale of the SL Boston Security are insufficient to satisfy
22   SL7's indebtedness under the SL7 Agreement.

23      vi.  The SL Boston Security, or so much thereof as may be
24   necessary, will be sold in the manner prescribed by law by
25   the levying officer, on proper application. Any party to this
26   action may purchase at the sale.

27      vii.  From the proceeds of sale after deducting costs and
28   expenses of the levy and sale, the levying officer will pay to

JUDGMENT

2030725.1

Lanphier,

1. First, the indebtedness under the SL7 Agreement set forth above, together with post-judgment interest;

2. Second, if any surplus remains after making the payment specified in the previous subparagraph, the surplus will be paid by the levying officer to any junior encumbrancers; and

3. Third, if any surplus remains after making the payments specified in the previous three subparagraphs, the surplus will be paid to the debtors as their interests may appear.

viii. The SL7 Agreement does not merge with this Judgment and Lanphier's future rights and obligations thereunder are not affected by this Judgment.

DATED:  April 30, 2014

_____

United States District Judge
Andrew J Guilford

21

JUDGMENT